HAEBLER v. JOHN EICHLER BREWING CO. et al.

(Supreme Court, Appellate Division, First Department. June 23, 1899.)

1. WILLS—CONDITIONAL LEGACY—EVIDENCE OF ACCEPTANCE.

A testator left shares of stock in a brewery to defendant on condition
that he pay testator's debts; otherwise, the stock to go to the widow, who
was residuary legatee. The latter testified that after the funeral defend-
ant told her that he did not want the stock, and returned it to her, and
she received dividends thereon; that a third person had offered to pay the
debts if defendant would give up the stock. Such person did repay defend-
ant for some of the debts, which he had paid, and also paid him the amount
of a note which he held against testator. He claimed that this sum was
given as a wedding present, and not in payment of the note; but he did
not call such person as a witness to corroborate him, although friendly to
him. Defendant's stepfather, who held a note of testator, had delivered
it to defendant, but the latter had not paid anything on it. Defendant,
who was executor of testator's estate, had paid part of the debts out of
money of the estate collected by him. When the widow was about to
marry a rival brewer, defendant offered her the face value for the stock.
*Held* to show that defendant had declined to accept the stock.

2. SAME—JUDGMENT—INDEMNITY BOND.

Defendant cannot complain of a judgment holding that he had refused
to accept a legacy conditioned on the payment of testator's debts, and
giving the legacy to the residuary legatee, on the ground that he may be
held liable for the debts, when the residuary legatee is required to give a
bond saving him harmless.

Appeal from special term, New York county.

Action by Pauline Haebler against the John Eichler Brewing
Company and another to compel the issuance of a certificate of
transfer of stock in defendant company. Judgment for plaintiff
(55 N. Y. Supp. 1071), and defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
McLAUGHLIN, and O'BRIEN, JJ.

Elihu Root, for appellants.
Robert B. Honeyman, for respondent.

RUMSEY, J. The plaintiff is the widow of Louis J. Heintz, who
died in the month of March, 1893, leaving a last will and testament,
by which the appellant John C. Heintz was made executor. By
the will the plaintiff was made the residuary legatee. Louis J.
Heintz at the time of his death was the owner of 10 shares of the
capital stock of the John Eichler Brewing Company, of the par
value of $10,000, and of a much greater actual value. By the sec-
ond clause of his will, Louis Heintz gave that stock to his brother,
John C. Heintz, the appellant, "upon the sole and express condi-
tion, however, that my said brother, in consideration of this be-
quest, assume and pay any and all amounts of indebtedness which
I may owe to any person at the time of my decease. If, however,
my said brother shall neglect or refuse to assume and pay such

indebtedness, then and in that event I do hereby give and bequeath the property hereby referred to in the second subdivision of my will" to the residuary legatee. The plaintiff claims that, after the death of her husband, John C. Heintz declined to accept this legacy, and did not pay the debts of the testator, as required by the will, but transferred the stock to her, as residuary legatee. She tendered the stock to the John Eichler Brewing Company, and demanded that a new certificate be made in her name and delivered to her. The officials of the brewing company refused to comply with this demand, and she brought this action to compel such a compliance. The learned justice at the special term found that the defendant John C. Heintz did not assume to pay the indebtedness of Louis J. Heintz; that he neglected and refused to do so; that thereby, under the provisions of the will of Louis J. Heintz, the stock became the property of the plaintiff; and that, as between the plaintiff and John C. Heintz, she is the owner of the shares in question, and is entitled to a new certificate of stock. Whether this conclusion is correct is the single question presented in this case.

The bequest of this stock to John C. Heintz was not, of course, effectual, unless it was accepted by him. He could not be bound to perform the conditions annexed to this gift unless he saw fit to do so; and he was at liberty to decline the legacy, and thereby not become subject to the conditions, or to accept it, in which case he was bound to pay every debt that Louis J. Heintz owed at the time of his decease. If he accepted it, he became subject to a personal liability to pay these debts. If, however, he declined it, no such liability existed, he lost his right to the stock, and it vested in the plaintiff, as any other property vested in her, under the residuary clause, subject to the rights of creditors. Schouler, Ex'rs, § 489. The only question therefore is, was the evidence such that the learned justice at the special term was justified in finding as a fact that John C. Heintz had declined to accept this legacy? The plaintiff testified that a few days after the funeral of her husband, while she was at her mother's house, John C. Heintz came to her, and said that he came to give her the shares of stock, that he did not want them, that he did not think he ought to have them, and that Mrs. Eichler would pay the debts. Shortly afterwards, she says, John C. Heintz came to the house of her late husband, where she then was, and took away the papers belonging to her husband, among which was the certificate of this stock, with other certificates of stock that were in the safe, but that a few days afterwards this certificate and all the other certificates were returned to her by Heintz, and that she kept them without any question until after her marriage with Haebler, when she sent the certificate to the John Eichler Brewing Company, as above stated, with a request that a new certificate be made out in her name and delivered to her. It appears that although the John Eichler Brewing Company was a prosperous concern, and the profits of the business were large, no dividends were declared; but it seems from the testimony that to each of the four shareholders was allotted a certain

sum of money, in proportion to the amount of stock held by each, and that from the time of the death of her husband until shortly before her marriage to Haebler the plaintiff received for her own use from the company the amount allotted to the 10 shares held by her husband. The stock of this corporation was divided into 600 shares, of $1,000 each, of which 560 were held by Mrs. Eichler. The plaintiff testifies that, after the death of her husband, Mrs. Eichler made inquiries of her as to how her husband's property had been left, and, upon being told that the 10 shares of stock had been left to John C. Heintz upon ·condition that he pay the debts, declared that that was not right, that she would not have it so, but that·she would pay the debts, and that John C. Heintz must deliver the stock to the plaintiff. It was after this declaration of Mrs. Eichler's that John C. Heintz in fact did deliver the certificate of stock to the plaintiff, as she says, in pursuance of that arrangement. It appears that John C. Heintz paid certain debts of Louis J. Heintz, to the amount of $1,320, and that this amount was repaid to him by Mrs. Eichler. John Heintz himself held a note made by Louis Heintz amounting to $2,500. The plaintiff testifies that John Heintz told her that Mrs. Eichler had agreed to give him the $2,500 which was due upon this note. It appears that in the month of April, after the death of Louis Heintz, Mrs. Eichler did in fact give to John C. Heintz a check for $2,500. The plaintiff says that afterwards John Heintz told her that Mrs. Eichler had paid him that money. Heintz says that, while he did get from Mrs. Eichler a check for $2,500, yet it was not given to him in payment of his $2,500 note made by Louis Heintz, but was in fact a wedding present to him. In regard to that matter neither party was corroborated. But it appears that, when it became known that the plaintiff was to marry Haebler, Mrs. Eichler and the plaintiff had words, and that Mrs. Eichler was no longer friendly to her. Mrs. Eichler was still living. She knew whether she had given that money to John C. Heintz as a wedding present, or in payment of the note of Louis Heintz which he held. If his story, therefore, was correct, he had the means of corroborating it out of the mouth of a friendly witness, whom he did not see fit to call. For that reason we have a right to assume that Mrs. Eichler would not have corroborated him, had she been called; and the learned justice at special term, in view of that fact, was justified in believing that his declarations to the plaintiff in regard to that matter expressed the truth, and in rejecting his testimony upon that point given at the trial. It appears also that Louis J. Heintz had given to one Ott a note for $4,000. Ott was the stepfather of Louis and John Heintz. This note of $4,000 was not in fact paid by anybody. All that appears is that John Heintz told Ott that the shares of stock were to go to him upon the payment of the debts, and that he wanted to make Ott good for that note of $4,000, and that Ott delivered him the note, but that he never paid anything upon it, and no demand was ever made for payment. It appears further that John C. Heintz collected from the assets of Louis J. Heintz a little over $3,844. Out of this sum he paid for

funeral expenses $2,200, and $30 for the services of the clergyman at the funeral, and he returned $1,133 to the plaintiff. The remainder (being something over $480) was used, as John Heintz says, to pay certain debts. He claims that these were the debts of the plaintiff. She says, however, that they were not hers, but that they were the debts of her husband; and an examination of the case leads us to believe that in this statement she was correct, and that John Heintz actually used $480 of the assets of the estate to pay the debts of Louis Heintz, which, if he had accepted this legacy, should have been paid out of his own pocket. The plaintiff also testifies that, after it became known that she was to marry Haebler, John Heintz came to her and proposed that he would give her $10,000 for the certificate of stock, but that she declined the proposition. In that evidence she is corroborated by other witnesses. She says she had the same conversation subsequently, at a time when Mrs. Eichler was present. John Heintz admits that he offered to give the plaintiff $10,000, but that it was not for the stock, that he proposed making her a present of $10,000, and that such proposition had no reference to the ownership of the stock at all. In regard to this matter, also, John C. is not corroborated by anybody, although he might have been corroborated to some extent by Mrs. Eichler, if his version is correct. We are inclined to think that the testimony of the plaintiff is the correct version of what was said at that time; and, if that be so, it was sufficient to warrant the learned justice below in concluding that when it became known that the plaintiff was to marry Haebler, who was a rival brewer, Heintz was desirous of becoming the owner of the 10 shares of stock, and promised to pay her $10,000 for it. Such a proposition, if made, could only have been upon the theory that the plaintiff was the owner of the stock, and it necessarily establishes the fact that the plaintiff's contention in that regard was true.

The learned trial justice therefore might have found that, after the death of Louis J. Heintz, John C. Heintz advised the plaintiff that he did not propose to accept this stock, and that she should have it; that this was done at the request of Mrs. Eichler, who paid all the debts of Louis Heintz that were paid, except the sum of $480, which John Heintz paid out of the assets of the estate; that, as a matter of fact, John Heintz personally never paid one dollar of the indebtedness of Louis Heintz, but that he declined to accept the conditions upon which alone the stock was given to him; and that, in the performance of his duty as executor, he transferred to the plaintiff that stock, the title of which had vested in her because he had declined to accept it. These being the facts in the case, the decision of the learned justice was correct. No rights of creditors can interfere. It appears that substantially all the debts have been disposed of, except this claim of $15,000, which was rejected. If that claim shall be established, whether the executor is liable for it, or whether the plaintiff, as residuary legatee, should be compelled to pay it out of the assets which she has received, would be a matter to be determined here-

after. In any event, it is sufficient to say that the requirements of the judgment that this plaintiff, as a condition of receiving her certificate of stock, should give a bond to save the executor harmless from the amount of this debt if it shall be established, is all that he could ask, and, indeed, more than he was entitled to. We have examined the exceptions to the rulings upon evidence, and find nothing in them to warrant a reversal.

The judgment, therefore, is correct, and should be affirmed, with costs. All concur.